29455, the state of Illinois, v. Curtis J. Scott, Jr. On behalf of the Avalanche, Ms. Amber Gray. On behalf of the Apoiee, Mrs. Linda McClain. Ms. Amber Gray, you're the first person I think I've ever met that has two names that are colors, although I think gray is spelled with an E. That's correct. And yours is spelled with an A, so it's not quite... No, it's not quite, but it's almost there. You may proceed. Thank you. Good morning. May it please the court, counsel. My name is Amber Gray. I'm with the Office of the State Appellate Defender, and I represent Curtis Scott in this matter. This appeal presents two issues, the first being whether Mr. Scott's two convictions and sentences for aggravated battery can stand under the One Act, One Crime rule, and the second is whether the state proved Mr. Scott guilty of aggravated battery based on the use of a deadly weapon beyond a reasonable doubt. It's my understanding that with respect to the first issue, the state has confessed error. Is that correct? That's correct, Your Honor. So basically, we're dealing with the second issue, the quantum of proof. Correct. If there are no questions on the first, then I was prepared to proceed just to the second. I have a question on the first one. Okay, Your Honor. At least it's somewhat related, not directly on point. Assuming that we don't agree with you on the second point, and it's remanded back, which do you think is the more serious crime? Well, in this case, I agree with the state in part that just based on the language of the cases, you know, there isn't a more serious count and there isn't a more culpable mental state. In my personal opinion, to answer your question, I would guess that the more serious is the one in which the allegation of the use of a weapon is involved. But according to the case law that the state has cited, I think it does have to be remanded back to the trial court for the trial court to make that determination. Okay. As to the second issue in this case, it's a challenge to the sufficiency of the evidence. The crux of the argument pertaining to the issue concerns the credibility or lack thereof of the complainant, Eric Williams. In particular, this has to do with the inconsistencies between his, Eric Williams' testimony and that of his wife, Michael Williams. And of course, then you have the hurdle, the well-settled hurdle, that the credibility of the witnesses, the weight to be given to the testimony is really to be determined by the prior fact. Is that correct? That's correct, Your Honor. But, you know, as this Court, I'm sure is aware, the fact finder's determination of reasonable people may act unreasonably. So that's really the crux of the argument. When you look at the credibility of Eric Williams, the complainant, to borrow a little bit from the prosecutor, there are big facts and little facts in a case and facts which you would in theory clearly remember. In a case such as this one, it seems like a really big fact and something you would And he initially tells Detective Florence, I don't know who did this. It's dark outside. I didn't get a really good look at this person. Let's assume all of that's true and not to short-circuit the proceedings. It's my understanding that when the defendant was being sentenced in his statement in elocution, the defendant conceded he attacked Williams. That's correct. So in light of that, in light of the injuries observed on Williams in his testimony, is there any doubt that he attacked the victim? There's no doubt that there's an altercation between Mr. Scott and Mr. Williams. But there is a doubt, and I think based on this record, that he actually used a gun. And that doubt comes from the fact that, first of all, Eric Williams does not testify consistently to the color of the gun. And Michael Williams, as we know, during the trial says, I never saw a gun. I never grabbed a gun. And if I made that statement earlier, I don't remember it. Is a bludgeon a dangerous weapon? A bludgeon would, in fact, be a dangerous weapon. But, you know, the argument here is that it wasn't a weapon at all. We don't have any testimony, you know, from a medical expert that this laceration is caused by the butt of a gun or a gun in general. I mean, the way at sentencing, to use from sentencing, the way that Mr. Scott says this incident happened, you know, he says he fell down the stairs. You know, if you hit your head on concrete, that certainly could cause a laceration. There's also an inference that perhaps, you know, you could do that with a boot of some kind. I mean, we don't have any evidence of that. Well, then what you're really saying, at least it seems to me, that the defendant may not have been proven guilty beyond a reasonable doubt regarding the dangerous weapon. What about the bodily harm? Are you telling me that the four or the, I think it was four or eight stitches that was put in his head wasn't indicative of bodily harm? I'm not arguing that they haven't established great bodily harm. I mean, there are tons of cases out there. So you're only arguing they haven't established the other count. Correct. I'm only arguing as to the deadly weapon count, that they have not proven beyond a reasonable doubt that a gun was in fact used. So you don't want it to be remanded to be totally candid and blunt with us on the theory of a gun being used. Because you're almost implying that there's enough evidence to sustain a conviction for aggravated battery. Correct? Correct. I mean, with this record, given what the defendant says at sentencing, and given that we do have pictures of a two-inch laceration on the victim's forehead, I can't say that an altercation didn't occur, but I certainly And that speaks well of you. Restraint for duly in light of the defendant's admission that he did not commit an aggravated battery. Well, I think once you look at sentencing and when you look at the trial court, I don't think you can argue on this record that there isn't evidence of great bodily harm as to justiceful clearance. But I certainly think that you can argue that they did not prove beyond a reasonable doubt that they used a weapon in this case, that being a gun. And that would be because there was inconsistencies in the testimony? And again, isn't it up to the trier of fact to weigh those? Correct, but when you look at the record as a whole, I don't think it's reasonable from this record to suggest that they proved beyond a reasonable doubt the use of a gun. We have, you know, one, the complainant saying there is a gun, but he is unbelievable all the way through. And then you also have Michael Williams, his wife, who changes her testimony quite shockingly that I never saw a gun and I never grabbed for a gun. The idea is that you don't have one, a single credible witness. What about the gash in his forehead? Was there any evidence he fell down the stairs? We don't have, I mean, they don't, there's no real suggestion. His testimony at trial is that someone came up to me and put a gun behind my back and hit me in the head with a gun. That's his testimony. So we don't have any evidence on the record about how else this laceration was caused, but we also don't have a credible witness to tell us that the laceration was caused by a gun either. And why isn't Williams credible? Well, Eric Williams isn't credible. He's impeached twice during the trial. He also, again, by Detective Florence, the statement he gave Detective Florence at the scene is, I don't know who attacked me. It was too dark to see my attacker. My attacker had hair. And, you know, then we get to trial, or excuse me, that my attacker's bald. Then we get to trial and it is, the lighting conditions are perfect. Of course I knew who my attacker was, I just didn't know his name. But I'm adamant my attacker had hair as well. So, you know, I'm arguing that he's not believable from start to finish. And then we have Micah Williams, who in theory is supposed to get up there and testify in accordance with her statement and to what her husband says, and she doesn't do that. Do you have any case law that stands for the proposition that the conviction cannot be sustained where there's some inconsistencies or impeachment as against the victim? Do you have any case law that says that? Well, for instance, in People v. Fields, which the state uses, in that case it's closely aligned and they do find that there is sufficient evidence of reasonable doubt. But I'm distinguishing that case because we have, he basically explains that he feared for his safety. We have reasons for the inconsistencies. And there are cases in which, you know, the Supreme Court has overturned because they think it's just too improbable based on the record. But Mr. Williams is being interviewed by Detective or Officer Florence. Correct. Almost contemporaneously with the event. I mean, the officer gets there, he's still on the ground. That's correct. Notwithstanding the fact that he has blood all over his face and on his hands, and they go to the police station. That's correct. The issue or why this statement could be inconsistent is the man just suffered some sort of a significant injury. We all agree upon that. That's true, Your Honor. And that could have been considered by the trier fact in making its determination. That's correct. And looking at that, if you want to explain how he could possibly be a little shaky about certain details, that's certainly true. He has just been hit in the head. However, I would say that being able to positively identify your attacker and telling an officer that you don't know them when you in fact do is quite, you know, it's a big fact to get wrong. And not to mention that then at trial we have Michael Williams testifying that there is no gun and that I didn't grab her gun. Now, you've indicated that the victim is not credible. Correct. How do you respond to the argument that how incredible or why is there a lack of credibility on the part of the victim when he says he was attacked by Williams initially and lo and behold, the defendant admits that he attacked him? So is he really that incredible when the defendant agrees that he attacked him? I think he's incredible because he doesn't say that Mr. Scott attacked him. What he says is, I don't know who my attacker is. This is in talking to Detective Florence. What about the time of trial? At the time of trial, he's adamant that it is the defendant. And the defendant then later says it was him. Correct. But the defendant also, you know, my argument as to reasonable doubt isn't that the incident occurred. My argument is that there was no gun used. So I don't think the fact that ultimately he positively identifies Curtis Scott, that isn't necessarily, it doesn't, I don't think weaken the argument that there's no gun used because it's in specifics to that gun not being there. We have Micah testifying it's not. And ultimately we have two what I believe are unbelievable witnesses, and I don't think from this record, I think it's an improbable outcome. It's just not rational from the record that you can say for sure beyond a reasonable doubt that there was a gun there. So the jury could have or should have believed him, believed that he was a victim of a crime, but not that a gun was used? I think there's enough to support the jury's inference that an aggravated battery occurred. But I do not think there's enough on this record based on the inconsistencies of the two key witnesses that a deadly weapon was used, that being a gun. That would be my argument. And so if we remanded and the judge decided it was just, if not just, it was an aggravated battery causing great bodily harm, then the next thing that might be requested is a reduction in the sentence since we don't have a gun? I don't think so, Your Honor, based on this record, because at sentencing I don't have any indication at sentencing that the trial court sentenced him to four years and six months because there was a weapon involved. There's no indication of that in the record. Well, the sentences were identical. Exactly. They're identical. So is the glass half empty or half full? Well, I... That's a legal question, not a philosophical question. It depends on whether you drank any before I ask you the question. Oh, right. Okay. You know, I, again, there's nothing to suggest at sentencing that he's given four years and six months because there was a weapon. And quite honestly, considering that he was extended term eligible in this case, the four years and six months I think is a relatively fair sentence because he is extended term eligible in this case. You didn't ask for oral argument, did you? No, I did not, Your Honor. Are you glad you have it? No. You know, I enjoy oral argument. You do enjoy it. Okay. I do. Good answer. Thank you. Thank you. Any other questions? No. Thank you, Your Honors. You'll have a chance to make your vote. Thank you. Mr. Kline. May it please the Court, Your Honor? I'll also respond to argument two. Did you get into that, was a gun recovered? No, a gun was not recovered. Were there some inconsistencies regarding a weapon being used in the testimony of the victim and the witness? The victim? Yes, there were. The victim testified that a weapon was used. The witness testified she did not see a weapon being used. However, her statement to the police said that her husband was being pistol whipped when she saw the incident. So she was impeached with her prior statement to the police that she saw her husband being pistol whipped. Was that committed under 11510.1? Was it substantive impeachment? Do you know? I don't recall. It could be important, couldn't it? Yes, it could. Is this the case where Ms. Williams said she didn't want to be there? Yes, it is. Did she say why? She didn't want to testify. Her defendant was her friend's brother and her friend had had a baby by her first cousin or something like that. So I think perhaps you can imply that her testimony at trial, she didn't want to be there because of the family implications possibly. The reason that Mr. Williams was there in the first place was because she had called and said that she had had too much to drink and she was not going to be able to drive. Right. And then she later, I think, tells the officer that she was sound asleep when he got there, which might be consistent with having too much to drink. So we've got some reason in the record for her memory either being not so good or maybe not very effective at the time that she talks to Florence as well, correct? Correct. But the interesting thing is she is more explicit in her memory then than she is later. Isn't that true as well? That is true. Is there any history in the record of any negative history between Williams and the defendant? I mean, that would explain the genesis of this altercation. I could not find anything. I think the defense counsel tried to establish something, but nothing came out. I think that while there were inconsistencies in the testimony of the victim and his wife in their prior statements to the detective, the jury, as prior fact, was aware of the problems in the testimony and had the opportunity to observe the demeanor of the witnesses and found the defendant guilty. The victim tested positively that he saw the gun and that defendant hit him with the gun. His statements to the detective immediately following the incident corroborated his trial testimony regarding use of the gun. While his wife testified at trial that she did not see a gun, her trial testimony was impeached with her statement to the police that she saw her husband being pistol whipped. As I've already mentioned, defendant's sister has a baby with her cousin, so she perhaps did not want to testify at trial for family reasons, explaining her inconsistencies. The severity of the victim's injuries corroborate the testimony and the statements and support the jury's finding that he was hit with a gun. What's your position relative to remand? I believe in argument one, I think that I conceded that the two aggravated batteries were based on the way the indictment in the theory at trial, that the two aggravated batteries are based on a single act and it should be remanded for the trial court to determine the more serious offense and which one should be vacated. Well, I'm having a problem understanding how the trial court, unless it's going to resentence the defendant, instead of merely vacating one charge and leaving the other charge intact, why it would have any greater knowledge than we would insofar as which would be considered to be the more grievous. I get by the argument that if the trial court was going to resentence on the remaining charge, fine, because are we talking about a resentence or are we just talking about vacating one of these charges and leaving the other one completely intact? My opponent has not asked for resentencing, so it sounded like she was stating the sentence was fair. So I believe that the Artis case, it's a 2009 case, a Supreme Court case. Under that case, you compare the relative punishments. The punishments for these two crimes are the same. You look for more culpable mental states. The mental states were both knowing, so they're both the same. And in that case, it said the Supreme Court had not used aggravating factors to determine which of multiple, in that case had to do with aggravated criminal sexual assault case, which the Supreme Court has not looked at aggravating factors to determine which is the more serious offense. In that case, they cited a Garcia case from 1997, which was aggravated criminal sexual assault in five counts, and two of the counts were similar to the ones we have here, using a dangerous weapon, and the second one was causing bodily harm. Were they given the same sentence by the trial court, or were they different sentences? I don't know. I apologize. I mean, it would be nice to have apples compared to apples instead of apples compared to oranges. Because if, in fact, they were different sentences, then it would make much sense, to me at least, that it should be remanded back for the trial court to decide which is the more serious. Because if they are distinguishable, then maybe he should distinguish it or she should distinguish it. But if they're virtually indistinguishable, you know, it's like the old cliche, how many pins can you stick into the head of an angel? Or how many angels can dance on the head of a pin? Depends on your frame of reference. The point is, I don't see any difference between these two charges as far as sending it back if the only thing that's going back to court is for a vacation of one of the charges and the affirmance of the other. Can't we do that? Don't the Supreme Court rules say we can enter any order that the trial court can? Or put it another way, is there any case law authority that holds or suggests the case should be remanded for the trial court to make that decision? I mean, were there any cases that hold that? The Ardis case... Unless we know that the sentences are the same, we could say that that's distinguishable. I guess I'm going to have to look at that case to see if, in fact, it mentions whether or not the sentences are the same. And it may not. But I think that the inference is there. Did it say anything? Do you recall if it said anything about being remanded for further sentencing? I don't believe it did. Well, I apologize for not knowing about the sentencing. But I'm pretty sure the Ardis case did not remand for resentencing at all. I think they just remanded for the trial court to determine which was more serious. Are there any other questions? No. Thank you. Ms. Gray? Your Honor, I wanted to begin with I didn't answer appropriately Justice Hudson's questions about whether there's a Supreme Court case that has reversed on incredible or incredible testimony. And that would be P. B. Smith. It's a 1999 Supreme Court case. In that case, there was a single witness that the state was really relying upon to get a conviction. And the Supreme Court said the serious inconsistencies of the witness's testimony. She'd also been repeatedly impeached. And there was also the allegation in that case that she may have had, in fact, a motive to lie. And going back to a question that this court raised to the state, we have at least the defense counsel asking a question of Eric Williams, excuse me, saying were you aware of a relationship that your wife may have been having with the defendant? Now, Mr. Williams responds no. But we also know that he's been inconsistent with how many times he's been over at that house. He says at least 10 times in the motion to suppress and then changes that story at trial saying I've only been there two times. So there is somewhat of an undercurrent of at least a motive behind this altercation. And there seems to be some reason that Mr. Williams doesn't want the court to know how many times he's been over at that house. I take it that in the case you cited, the defendant did not acknowledge his sentencing having committed a crime, correct? No, I don't. Those facts weren't before that court. The next question is, as we asked your opposing counsel, are you aware of any case law that mandates or requires this court to remand it for the trial court to make the determination as to which is the more serious offense? In specifics to, I think this question kind of goes to whether or not there needs to be sentencing, needs to look at sentencing again. In the cases that I looked at where they vacated under one act, one crime, in some instances the appellate court does simply vacate the conviction. But in general, those are cases where, for instance, you know, it's two home invasion counts. I'm not aware in those cases where they've sent that back for resentencing or that it has to go back. But it does go back in cases where, you know, you can't determine which is the more serious of the two. Are you requesting a remand or no remand? I'm requesting, I simply requested in my brief that this court vacate one of the convictions. I did not request remand. The state did. If there are no further questions, Your Honor. Well, and it would be simple if we found that there would be, if there was not proved beyond a reasonable doubt on the gun charge, then there's only one life. Exactly. If you agree with my argument that they didn't prove beyond a reasonable doubt the deadly weapon, then the one act, one crime issue is no longer relevant because we're down to the one conviction. Exactly. Thank you, Your Honors. Thank you. The case will be taken under advisement of the court's attorney.